Maxwell v. Texas Department of Transportation 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,


AT AUSTIN


 



NO. 3-93-562-CV



RHONDA MAXWELL,


 APPELLANT

vs.



TEXAS DEPARTMENT OF TRANSPORTATION,


 APPELLEE

 



FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT


NO. 13,960, HONORABLE CLAYTON E. EVANS, JUDGE PRESIDING


 



 We are asked in this appeal to determine the limits of governmental immunity under
the Texas Tort Claims Act. Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109 (West 1986 &
Supp. 1994). Rhonda Maxwell appeals from a take-nothing summary judgment rendered in favor
of the Texas Department of Transportation ("the Department"). We will affirm the judgment of
the trial court.


BACKGROUND


 Maxwell was severely injured early one morning when her car veered off U.S.
Highway 281 and came to rest in a culvert adjacent to the road. Maxwell asserts that she swerved
off the road to avoid hitting a deer. The Department built and continues to maintain both the
culvert and highway. Maxwell sued the Department, alleging that the culvert constituted a special
defect or, in the alternative, an ordinary premises defect, and that her injuries were proximately
caused by the Department's failure to warn of the culvert or make the culvert reasonably safe. 
At the time of the accident the only warning device notifying motorists of the culvert's existence
was a post with three amber reflectors. 

 The Department moved for summary judgment on the basis of governmental
immunity under sections 101.056(2) and 101.061 of the Texas Tort Claims Act. The Department
also argued that Maxwell could not prove all of the elements of a premises cause of action. 
Because the summary judgment order did not state the basis of the trial court's judgment, Maxwell
brings four points of error attacking all three grounds stated in the Department's motion for
summary judgment. See Tindle v. Jackson Nat'l Life Ins. Co., 837 S.W.2d 795, 797 n.1 (Tex.
App.--Dallas 1992, no writ) (when the trial court does not state the basis for granting summary
judgment appellant has burden to address each of the summary judgment grounds presented by
the movant in order to show the trial court's error). We will affirm the trial court's judgment
if any of the theories advanced by the Department demonstrates a right to judgment as a matter
of law. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989). In reviewing the summary
judgment, we will indulge every reasonable inference and resolve any doubts in favor of the non-movant. Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 549 (Tex. 1985). 


TEXAS TORT CLAIMS ACT


 A state agency, such as the Department, may not be sued for damages unless the
Texas Tort Claims Act waives the state's governmental immunity for the alleged wrongful act. 
Lowe v. Texas Tech Univ., 540 S.W.2d 297, 298 (Tex. 1976). Under the Act, a governmental
unit may be held liable for personal injury or death caused by a defective condition or use of
tangible personal or real property if, under the circumstances, a private person would be liable
to the claimant according to Texas law. Texas Tort Claims Act § 101.021(2). The statute
provides legislative consent to sue a governmental unit for a claim allowed under the Act. Id. at
§ 101.025(b).

 However, the Tort Claims Act does not provide a waiver of immunity when a claim
is based on an agency's performance or nonperformance of an act committed to agency discretion. 
Id. at § 101.056(2). Nor does it apply to agency acts or omissions committed before January 1,
1970. Id. at § 101.061. The Department asserted both of these exceptions to liability in its
motion for summary judgment.

 The Tort Claims Act also provides that an agency shall not be liable for its failure
"initially to place a traffic or road sign, signal, or warning device if the failure is a result of a
discretionary action of the governmental unit." Id. at § 101.060(a)(1). However, when the
danger constitutes a special defect, the state has an obligation to place a warning device, and will
not be immune from liability if it fails to do so. Id. at § 101.060(c). Maxwell attempts to
circumvent the Department's immunity from claims based on discretionary acts by arguing that
the culvert constituted a special defect. Id. at §§ 101.022(b), .060(c). In the alternative, she
argues that the culvert was a premises defect. Whether a condition constitutes a special defect or
a premises defect is an issue of law for the court to decide. State Dep't of Highways & Pub.
Transp. v. Payne, 838 S.W.2d 235, 238 (Tex. 1992). 


DISCRETIONARY ACTS


 The Department moved for summary judgment contending that Maxwell's
complaints regarding the placement of the culvert and its safety features are essentially complaints
about the design of the culvert, an issue committed to agency discretion. A governmental entity's
discretion in the design of roads and bridges, which includes the installation of safety features
such as guardrails and barricades, is protected from liability by section 101.056(2) of the Tort
Claims Act. Wenzel v. City of New Braunfels, 852 S.W.2d 97, 98 (Tex. App.--Austin 1993, no
writ) (failing to erect barricade, warning sign, or similar warning device); City of El Paso v.
Ayoub, 787 S.W.2d 553 (Tex. App.--El Paso 1990, writ denied) (design, placement, and upgrading
of guardrails and barricades on bridge over culvert); Burnett v. Texas Highway Dep't, 694 S.W.2d
210, 212 (Tex. App.-- Eastland 1985, writ ref'd n.r.e.) (replacement of highway metal beam guard
fence with rigid barrier); Stanford v. State Dep't of Highways & Pub. Transp., 635 S.W.2d 581,
582 (Tex. App.--Dallas 1982, writ ref'd n.r.e.) (decision not to add guardrails on overpass). 

 In her first point of error Maxwell insists that the trial court erred in granting
summary judgment based on immunity for discretionary acts because the Department's decisions
regarding the placement of the culvert and its safety features involve professional or occupational
discretion not protected by section 101.056(2). See Eakle v. Texas Dep't of Human Servs., 815
S.W.2d 869, 874 (Tex. App.--Austin 1991, no writ) (discussing professional and occupational
discretion). She asserts that while the decision to build the highway is a policy decision protected
from liability, the placement of the culvert and its safety features are unprotected architectural and
engineering decisions. We disagree.

 Actions involving occupational or professional discretion are devoid of policy
implications. Examples include decisions made in driving a mail truck, 3 K. Davis,
Administrative Law Treatise § 25.08 at 403-4 (Supp. 1982); or the decision by a drama instructor
to use a glass rather than a plastic prop in a university production. Christilles v. Southwest Texas
State Univ., 639 S.W.2d 38, 42 (Tex. App.--Austin 1982, writ ref'd n.r.e.). Decisions
regarding the design of a highway and the installation of safety features, however, do not fall into
this category. It is not proper for a court to second-guess the agency's decision that some other
type of marker or safety device would have been more appropriate than the amber reflector at
issue, or that the culvert was placed too close to the highway. To do so would displace the
authority of the agency responsible for making such decisions. See Ayoub, 787 S.W.2d at 554;
Burnett, 694 S.W.2d at 212; Stanford, 635 S.W.2d at 582. 

 Contrary to Maxwell's argument, a "professional," such as an engineer, may use
his or her skills in designing adequate safety features for a highway without subjecting the process
to judicial review as an occupational or professional class of agency action. Thus, even though
the Department may have used engineering expertise and discretion in the planning and design of
the culvert, the action remains in the informed discretion of the agency and exempt from liability
under section 101.056(2). 

 Maxwell next argues that the Department is not entitled to immunity from liability
pursuant to section 101.056(2), because the culvert constitutes a special defect. See Texas Tort
Claims Act § 101.060(c) (state liable for injuries arising from failure to warn of special defects). 
As such, appellant argues that the agency has a mandatory, rather than discretionary, duty to warn
motorists of the dangerous condition, and section 101.056(2) does not apply. However, the
mandatory duty to warn of special defects provides an exception only to those exemptions from
liability described in section 101.060 of the Tort Claims Act. Id. 

 Section 101.060 exempts the government from liability for injuries caused by: 1)
the Department's failure to initially place a traffic signal or warning device if the decision is
within the agency's discretion; 2) the absence, condition or malfunction of a traffic signal or
warning device if the Department has not had sufficient notice to remedy the defect; and 3) the
removal or destruction of a traffic signal or warning device by a third person if the Department
has not had sufficient notice to replace the sign or device. Id. at § 101.060(a). Section 101.060
further states that if the injury is caused by a special defect, the mandatory duty to warn of the
special defect abrogates governmental immunity. Id. at § 101.060(c). We note that the
Department did not assert section 101.060 as a ground for summary judgment.

 In her pleadings, Maxwell stated that the Department failed to warn her of the
culvert's existence. Summary judgment evidence presented by both the Department and Maxwell
shows, however, that motorists were warned of the culvert by a "type 2" marker consisting of a
post with three amber reflectors. Maxwell's response to the Department's motion for summary
judgment suggests that the Department breached its duty to Maxwell by placing the culvert too
near the road, failing to provide guardrails or barricades, and using the wrong type of warning
device. These claims do not complain of the absence of a warning device, but, rather, the
adequacy of the marker already in place. 

 Cases that have found special defects under section 101.060(c) involve the state's
failure to provide any warning device at all. Harris County v. Eaton, 573 S.W.2d 177, 179 (Tex.
1978) (county failed to place signs warning of abnormally large hole in pavement); State v.
McBride, 601 S.W.2d 552, 558 (Tex. Civ. App.--Waco 1980, writ ref'd n.r.e.) (signs advising
motorists to reduce speed did not warn of hazard of slick mud on road as result of construction);
Miranda v. State 591 S.W.2d 568, 570 (Tex. Civ. App.--El Paso 1979, no writ) (agency did not
place signs warning of flood waters on low water crossing). In this case, however, the evidence
shows that a warning sign was present.

 Even if Maxwell's claim involved a complete failure to warn of the culvert, thereby
triggering the mandatory duty to warn, we do not believe that the culvert constitutes a special
defect. Special defects have been held to be those obstructions that present unexpected and
unusual dangers to ordinary users of the highway that are beyond the normal course of events. 
Payne, 838 S.W.2d at 238; Wenzel, 852 S.W.2d at 100. In Payne, a culvert was held not to be
a special defect because normal users of the highway were unlikely to encounter it. Id. 

 We believe that the culvert at issue here is not a special defect because it, too,
would not be encountered by ordinary users of the highway. Like the plaintiff in Payne, Maxwell
travelled off the road before coming into contact with the culvert. Special defects are obstructions
that affect normal highway traffic. Eaton, 573 S.W.2d at 179; McBride, 601 S.W.2d at 558;
Miranda, 591 S.W.2d at 570. The culvert also does not present an unusual danger beyond the
normal course of events. The Department's summary judgment evidence shows that the culvert
had been in place since the late 1950's and that there had been no reported accidents involving the
site before Maxwell's. 

 Because the Department has established its immunity based on section 101.056(2),
we overrule the first point of error.


NO MATERIAL FACT ISSUES


 In her second point of error, Maxwell argues that she has raised various fact issues
that should defeat the summary judgment in favor of the Department. However, all of the alleged
facts relate to the adequacy of the Department's warning and the steps taken by the agency to
make the culvert safe. When an appellee, such as the Department, has conclusively established
that it cannot be held liable because of governmental immunity, any facts relating to its liability
are immaterial. Eakle, 815 S.W.2d at 877. A motion for summary judgment cannot be defeated
by the existence of an immaterial fact issue. Id. Accordingly, Maxwell's second point of error
is overruled. 


ACTS OR OMISSIONS BEFORE JANUARY 1, 1970


 Maxwell's third and fourth points of error concern the Department's assertion of
section 101.061 as an alternative basis for governmental immunity. The Department argues that
it was entitled to summary judgment because the Tort Claims Act "does not apply to an act or
omission that occurred before January 1, 1970." Texas Tort Claims Act § 101.061. If the
Department proves that the culvert was completed before 1970 and has remained in the same
condition since that time, then, as a matter of law, the Department is entitled to immunity under
section 101.061. Tarrant County Water Control & Improvement Dist. No. 1 v. Crossland, 781
S.W.2d 427, 432 (Tex. App.--Fort Worth 1989, writ denied), overruled on other grounds,
Mitchell v. City of Dallas, 870 S.W.2d 21, 23 (Tex. 1994). The Department's summary judgment
evidence shows that the highway and culvert were constructed in the late 1950's and that there
have been no changes in the traffic control devices, signs, markers, and safety features of the
culvert since January 1969. Maxwell's summary judgment evidence does not contradict this. (1)

 Maxwell argues that the Department's failure to upgrade or improve the safety
features of the culvert during renovation of the highway in 1979 constitutes an act or omission that
occurred after January 1, 1970. We disagree. The act or omission is the actual building of the
structure. University of Texas-Pan Am. v. Valdez, 869 S.W.2d 446, 449 (Tex. App.--Corpus
Christi 1993, writ denied). When the claims concern a structure built before January 1, 1970, the
state is exempt from liability. Chapman v. City of Houston, 839 S.W.2d 95, 99 (Tex.
App.--Houston [14th Dist.] 1992, writ denied). Failure to provide additional safety features and
devices after 1970 does not constitute an act or omission within the meaning of section 101.061. 
See Crossland, 781 S.W.2d at 432. 

 In response, Maxwell argues that interpreting section 101.061 to bar claims based
on pre-1970 highway designs encourages the state to ignore highway defects because they existed
before 1970. She asserts that the state has been given free rein to ignore unsafe highways and
dangerous conditions simply because of the defect's age. This argument, however, disregards the
intent of section 101.061 which is to "provide for the abolishment of governmental immunity
without causing havoc." Chapman, 839 S.W.2d at 99. The legislature did not want to place the
state in the position of trying to analyze every structure under its control and then rebuild,
redesign, and make safe all of those structures in order to protect the state from liability. Id. 
Maxwell would have the state confront the same problem that the legislature clearly intended for
it to avoid. We overrule Maxwell's third and fourth points of error. 


CONCLUSION


 Because we hold that the Department has satisfied its burden of proof to support
governmental immunity under section 101.056(2) and section 101.061 of the Texas Tort Claims
Act, we affirm the judgment of the trial court.




 Bea Ann Smith, Justice

Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: June 22, 1994

Publish
1. [1] Maxwell points out that the original design for the highway in 1959 contemplated the
erection of several timber posts along the culvert to serve as a guard fence. She argues that
the Department failed to conclusively prove that the fence was removed before 1970, and,
thus, a fact issue remains defeating summary judgment. The Department's summary judgment
evidence shows, however, that the wooden posts were replaced before January 1969, and since
that time there have been no changes made to the site by the Department.